John T. Wendland, Esq.
(Nevada Bar No. 7207)
WEIL & DRAGE, APC
2500 Anthem Village Drive
Henderson, NV 89052
702-314-1905 Phone • 702-314-1909 Fax
jwendland@weildrage.com

Attorneys for Plaintiff,
DeMARLO BERRY

**[counsel continued on page following the caption]**

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DeMARLO BERRY, an individual,<br><br>       Plaintiff,<br><br>   vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a government entity; CLARK COUNTY, a political subdivision of the State of Nevada and a government entity; KAREN GOOD, an individual and an employee of a government entity; NORMAN ZIOLA, an individual and an employee of a government entity; PHIL FABIAN, an individual and an employee of a government entity; GREG JOLLEY, an individual and an employee of a government entity;  WILLIAM KEATON, an individual and an employee of a government entity; and JOHN DOES  1 through 10, inclusive,<br><br>       Defendants. | **CASE NO.:**<br><br><br>**COMPLAINT AND JURY DEMAND** |

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                Page 1 of 29

Nick Brustin, Esq.
(New York Bar No. 2844405)
Emma Freudenberger, Esq.
(New York Bar No. 4624045)
Len Kamdang, Esq.
(New York Bar No. 4345179)
*Being Admitted Pro Hac Vice Application Pending*
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
212-965-9081 Phone • 212-965-9084 Fax
nick@nsbcivilrights.com
emma@nsbcivilrights.com
len@nsbcivilrights.com


Craig C. Coburn, Esq.
(Utah Bar No. 00688)
Steven H. Bergman, Esq.
(Utah Bar No. 13641)
Samantha E. Wilcox, Esq.
(Utah Bar No. 15284)
*Being Admitted Pro Hac Vice Application Pending*
RICHARDS BRANDT MILLER NELSON
Wells Fargo Center, 15th Floor
299 S. Main Street (84111)
P.O. Box 2465
Salt Lake City, UT 84110-2465
801-531-2000 Phone • 801-532-5506 Fax
craig-coburn@rbmn.com
steven-bergman@rbmn.com
samantha-wilcox@rbmn.com

## COMPLAINT AND JURY DEMAND

Plaintiff, DeMarlo Berry (herein after "Berry" or "Plaintiff"), by and through his attorneys, the law firms: Neufeld, Scheck & Brustin, LLP; Weil & Drage, APC and Richards Brandt Miller Nelson, P.C. alleges as follows:

## INTRODUCTION

1.      Berry spent over twenty-three years in prison for a murder that he did not commit before a joint investigation by the Clark County District Attorney's Office and the Rocky Mountain Innocence Center proved his innocence.

WEIL & DRAGE
A T T O R N E Y S   A T   L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 2 of 29

2.     On the night of April 24, 1994, Steven Clay Jackson, aka "Sindog" (hereinafter "Jackson" or "Sindog") at the time, robbed a Carl's Jr. restaurant in Las Vegas.  Jackson was a 6'1" roughly 225 lbs. black man and serial armed robber who led a San Bernardino Crips gang called Tre 57 Crips.  When manager Charles Burkes took too long to open the safe, Jackson shot and killed Burkes before fleeing Las Vegas to California.

3.     Berry, who was only nineteen years old at the time or the crime, is completely innocent of the murder of Charles Burkes.  He did not rob the Carl's Jr., shoot and kill Charles Burkes, or assist Jackson in any way in his escape.  Berry had no affiliation with Tre 57 Crips or any other gang.

4.     Berry's wrongful conviction was no accident.  Rather, it was the result of misconduct by Defendant Officers, who used suggestive identification procedures and other improper tactics to cause five separate witnesses to falsely identify Berry as Charles Burkes' murderer—even though Berry looks nothing like the true assailant, Jackson, and did not match the original descriptions witnesses gave the night of the crime.

5.     Defendants then sealed Berry's fate by fabricating a statement that Berry had confessed.  While Berry was in jail awaiting trial, the Defendants suggested to inmate Richard Iden (herein after "Iden"), a man facing charges for forgery and a likely habitual criminal sentence that he should falsely claim that Berry had confessed to him.  Defendants then fed Iden key details about the crime, investigation, and Berry to make Iden's witness statement appear reliable.  Finally, Defendants lied to cover up this misconduct, falsely claiming that Iden had approached them and that his account had originated with him.

6.     No physical or other evidence linked the innocent Berry to the crime in any way.  Indeed, Berry was excluded as the source of finger and palm prints believed to have been left by the perpetrator.

7.     Berry consistently and adamantly maintained his innocence to the crime.

8.     The Las Vegas Metropolitan Police Department (herein after "LVMPD") Detectives' misconduct in securing Iden's false statement and those tainted identifications caused Berry to be arrested and convicted of Charles Burkes' murder.  Berry was sentenced to life in

WEIL & DRAGE
A T T O R N E Y S   A T   L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

1   prison plus a consecutive twenty-five years.

2        9.     The LVMPD Detectives' conduct was overseen by Defendant supervising officers

3   who, upon information and belief, knew or should have known of the tainted identification

4   procedures and other tainted evidence developed by the investigators.

5        10.    Berry's wrongful conviction was finally vacated on June 28, 2017, following a

6   reinvestigation by the Rocky Mountain Innocence Center and the Clark County District Attorney's

7   Office.

8        11.    On May 3, 2013, Jackson truthfully confessed to the murder of Charles Burkes —

9   almost twenty years after the crime.  Jackson stated that he had been on drugs when he decided to

10   commit the robbery, described wearing attire that matched the initial descriptions provided by

11   witnesses, and accurately described how he had been chased by a crowd, jumped over a wall, and

12   fled.

13        12.    Jackson's confession was corroborated by an independent witness, Maisha Mack.

14   On April 23, 2013, Mack explained that, in 1994, she overheard Jackson confess to the murder of

15   Charles Burkes while she, Jackson, and his brother were socializing together in the Sierra Vista

16   area of Las Vegas.

17        13.    On January 20, 2014, Richard Iden, the jailhouse informant, admitted that Berry

18   had never confessed to him and that he had lied at the behest of Defendants Good, Ziola, Fabian,

19   and the John Doe #1 District Attorney Investigator.  In a sworn affidavit, he wrote that he had

20   testified falsely *as instructed* at Berry's murder trial in 1995.  He confirmed that Berry had never

21   confessed to him.  In fact, he swore that he had never met Berry prior to his brief conversation

22   with him in holding.  According to Iden, he was induced to falsely implicate Berry by Defendants,

23   who also fed him the details included in his account—a fact that was never disclosed by the

24   Defendants.

25        14.    A Clark County Assistant District Attorney interviewed Jackson, who not only

26   confirmed what was in his affidavit but also provided additional information about the crime scene

27   that would not have been known by someone who was not there at the time of the murder,

28   including details that resolved several seeming inconsistencies in the forensic evidence.  The

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 4 of 29

Assistant District Attorney also determined that there had been no contact between Berry and Jackson since Berry's conviction.

15.    On June 27, 2017, after that reinvestigation, the Clark County District Attorney joined a request to vacate Berry's conviction and dismiss the charges against him.

16.    On June 28, 2017, Berry was finally released from prison after serving over twenty-three years in prison for a crime that he did not commit.

17.    The misconduct in Berry's case was part of a larger pattern of police misconduct of which defendants were aware.

18.    Through this civil rights action, Berry seeks to bring Defendants' misconduct to light and to ensure they are held accountable for their actions.  Berry also seeks justice for the loss of many of the prime years of his life due to his unjust conviction.

**JURISDICTION AND VENUE**

19.    This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Berry's rights as secured by the United States Constitution.

20.    This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

21.    Supplemental jurisdiction over Berry's state law claims exists pursuant to 28 U.S.C. § 1367(a).

22.    Venue is properly laid in the District of Nevada under U.S.C. § 1391(b), in that this is the District in which the claim arose.

23.    Plaintiff respectfully demands a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38(b).

**PARTIES**

24.    Berry is currently forty-four years old and lives in Las Vegas, Nevada with his wife. At the time of Charles Burkes' murder, Berry lived with his mother on the south side of Las Vegas.  He was just twenty years old at the time of his wrongful conviction.

25.    At all relevant times, Defendant Karen Good was employed as a Detective in the

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 5 of 29

LVMPD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada.  Upon information and belief, she is entitled to indemnification under statute and by contract.  She is sued in her individual capacity.

26.     At all relevant times Defendant Norman Ziola was employed as a Detective in the LVMPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada.  Upon information and belief, he is entitled to indemnification under statute and by contract.  He is sued in his individual capacity.

27.     At all relevant times Defendant William Keeton was employed as a Sergeant in the LVMPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada.  Upon information and belief, he is entitled to indemnification under statute and by contract.  He is sued in his individual capacity.

28.     At all relevant times Defendant Greg Jolley was employed as a Sergeant in the LVMPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada.  Upon information and belief, he is entitled to indemnification under statute and by contract.  He is sued in his individual capacity.

29.     At all relevant times Defendant Phil Fabian was employed as a Detective in the LVMPD, acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada.  Upon information and belief, he is entitled to indemnification under statute and by contract.  He is sued in his individual capacity.

30.     The Defendant Clark County is a political subdivision of the State of Nevada, which is formed and operated pursuant to the Nevada Revised Statutes.  At all times relevant to the complaint, the Clark County District Attorney's Office was a subdivision of Clark County. Defendant Clark County employed Defendant John Doe #1 and some or all of John Does #2–10.

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                                    Page 6 of 29

31.     Defendant Las Vegas Metropolitan Police Department is a political subdivision of the State of Nevada and employed Defendants Karen Good, Norman Ziola, Phil Fabian, Greg Jolley, William Keaton and some or all of John Does #2–10.

32.     Defendant John Doe #1 is an investigator who was employed by the Clark County District Attorney's Office – a subdivision of Defendant Clark County, Nevada.  Plaintiff has not been able to learn John Doe #1's name despite his due diligence.  At all relevant times Defendant John Doe #1 was acting under color of law and in his individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada.  Upon information and belief, he is entitled to indemnification under statute and by contract. He is sued in his individual capacity.

33.     Defendant John Does #2 through #10, whose actual names Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those officers, detectives, supervisors, and/or other agents and employees of the LVMPD and/or Clark County, acting under color of law and in their individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of Clark County and the State of Nevada, who participated in the misconduct described herein.  Defendants John Doe #2 through #5 are Clark County District Attorney supervisors who failed to supervise the misconduct of Defendant John Doe #1.  Defendants John Doe #6-10 are LVMPD employees.

34.     Plaintiff has complied with the requirements of Nevada state law NRS § 41.036(2).  Berry made and served all Defendant's with notice of claim on all Defendants on February 28, 2018.  No offers of settlement have been made.

## FACTS

### The Murder

35.     On the evening of April 24, 1994, Jackson and a fellow gang member accomplice known as C-note—not Berry—robbed a Carl's Jr. restaurant.  Jackson was a leader in the Tre 57 Crips gang in San Bernardino, California.  He had come to Las Vegas on March 24, 1994, to get married.

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 7 of 29

36.     Jackson was a serial armed robber and had a history of arrests for armed robberies: On July 7, 1992, Jackson was arrested for an armed robbery in San Bernardino; on November 14, 1992, he was arrested for grand theft auto and armed robbery — he had an unknown accomplice in that crime as well; and on November 22, 1992, he was arrested again for another armed robbery.

37.     The night of the robbery, Jackson and C-Note drove to a motel behind the Carl's Jr. C-Note stayed in the car, with the engine running, while Jackson walked to the Carl's Jr.

38.     At the time, Jackson was, by all accounts, an imposing figure, standing 6'1" and weighing around 225 lbs.  The night of the murder, he was wearing a dark trench coat that was about knee length and covered his head and jheri curled hair with a black stocking cap.  He wore no mask or anything else covering his face.

39.     At approximately 8:15 PM, Jackson entered the Carl's Jr.  He walked directly behind the counter and pointed a gun at the cashier, Rae Lynn Metz.  Jackson then instructed Metz to open the cash register, which she did.  The interaction between Metz and Jackson lasted for a few minutes, during which Metz was never more than three to five feet away from Jackson.  Metz had ample opportunity to view Jackson's face.

40.     During this period, Jackson touched several areas behind the counter, leaving fingerprints and palm prints.  Jackson removed the cash from the register and then went looking in the back of the restaurant.  While Jackson's back was turned, Metz escaped out the side door. Before doing so, she screamed "gun" to the store's manager, Charles Burkes.  She ran over to the nearby Long Branch Saloon.

41.     After Metz had escaped, Jackson confronted Burkes.  Jackson pointed his loaded gun at Burkes and demanded that he open the safe.  Suddenly, customer Rudolph Nicholas Guerrero entered the Carl's Jr. restaurant.  Jackson motioned to Guerrero to come toward the service counter, but Guerrero felt there was something off:  Jackson was behind the counter but not wearing a Carl's Jr. uniform.  Guerrero retreated out of the restaurant and ran to his car. Guerrero also had an unobstructed view of Jackson's face inside the well-lit restaurant.

42.     After Guerrero's exit, Burkes led Jackson to the safe while laughing nervously.  He opened the safe.  Patron Steven Bukowski watched the entire scene.  He saw Jackson clearly and

WEIL & DRAGE
A T T O R N E Y S   A T   L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                                Page 8 of 29

identified him as about 6'0" tall and of medium build, wearing a black shiny hat, and holding a small pistol in his left hand.  He also saw Burkes bent down with Jackson pressing the gun to Burkes' back.  Bukowski escaped to the bathroom where he heard two gunshots.  Jackson had shot Burkes in the back behind the left shoulder.  The bullet traveled downward severing a major artery.  Burkes died at the scene.  Plaintiff Berry is right-handed.

43.     Jackson grabbed what was inside the safe and fled the Carl's Jr. out the front door, ran to the back of the Carl's Jr., jumped over the short wall that separated the properties, and into the waiting getaway car with C-note.  Outside the Carl's Jr., a small crowd of people had gathered, many of them patrons from the Long Branch Saloon.  Three of those patrons—Kurtis Wermers, Kevin Lamora, and Stephen Kaefer—chased Jackson as he fled towards the wall.  None ever got a good look at Jackson's face and could only report to Detectives Good and Ziola their perspectives on Jackson's height, weight, and that he was wearing a long black coat.

44.     A few days after the murder, Jackson confided to his brother Daniel Jackson in the presence of Maisha Mack that he had robbed a Carl's Jr. and murdered the store manager.

**DeMarlo Berry**

45.     At the time of the robbery, Berry was nineteen years old, weighed 140 lbs. and was only 5'8".  He could not reasonably be confused for a 6'1", 225 lbs. Steven Jackson.  Moreover, their faces do not look alike.

46.     Berry happened to come into the Carl's Jr. parking lot at the time Jackson was robbing the restaurant.  Jackson had a reputation in the community for being a violent "stick-up" guy, meaning he carried a loaded gun and would rob people and was not at all concerned about shooting people who resisted, even slightly.  Berry immediately recognized Jackson when Berry was walking up to the Carl's Jr. — but backed away from the restaurant once he realized that a robbery was taking place.  Berry remained standing in the far corner of the parking lot for a few minutes.

47.     Berry heard the shots fired and watched as a crowd chased Jackson before he escaped over the wall.

48.     Berry left the scene before the police arrived with a friend, Larry Walker, who also

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 9 of 29

observed Jackson and C-Note drive away from the robbery.

**Despite Evidence Pointing to Jackson as the Shooter, Defendants Focus on Berry**

49.     LVMPD Detectives Karen Good and Norman Ziola were the lead detectives investigating the robbery/murder.  Ziola arrived at the Carl's Jr. around 8:40 PM, and Good immediately began interviewing witnesses at the police station.  At the time, nearly all of the initial witness statements accurately described a man of Jackson's height and weight.

50.     By the time the police arrived, Berry was a few blocks away.  In the aftermath of the shooting, he had been stopped by a K-9 unit and frisked by that officer.  Because there was no indication the innocent Berry had anything to do with the crime—no gun, no blood, nothing—he was told to go home, which Berry did.  In fact, Berry was warned by the officers on the scene to leave the area for his own safety because there had been a homicide in the area.

51.     At the crime scene, police collected thirty-two latent fingerprints and palm prints — several of which were likely left by Jackson.

52.     On April 28, at the direction of Defendants, a newspaper published an account of the murder.  The article mentioned that there was a $10,000 reward associated with information leading to the arrest of suspects.

53.     Thursday, April 28, 1994, police received an anonymous tip implicating both "Sindog" (erroneously identified as Charles Jackson, rather than Steven Jackson) and a person named "DeMarlo" in the robbery.  Although "Sindog" was identified by the wrong first name, he was accurately described as an imposing figure—the tipster said he was 6'4" and 240–260 lbs.— just as the witnesses had described the shooter.  The tipster further explained that "Sindog" had "gone back to San Bernardino".  But, at least initially, Detectives Good and Ziola were unable to locate records of "Sindog" because they were searching for "Charles Jackson" rather than "Steven Jackson."

54.     At the time, Berry was known to Las Vegas police due to previous arrests.

55.     Upon information and belief, the tip falsely implicating Berry in the Carl's Jr. shooting may have been provided by an acquaintance of Berry's who held a grudge.  In any event, the tip itself was not evidence.  The tip at most provided reason to investigate.  Any true and fair

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 10 of 29

investigation would have easily established that Jackson *was* guilty of the Carl's Jr. robbery and Burkes' murder and that Berry was innocent. Instead, Detectives Good and Ziola focused on Berry, who had a distinctive name and was from Las Vegas, and was thus easier to locate.

### Defendants use Suggestion to Obtain Four False Identifications of Berry

56. Despite the tip, there were early indications Berry was innocent: in particular, Berry was several inches shorter and more than fifty pounds lighter than most of the descriptions given at the scene. Nevertheless, Berry became Detectives Good and Ziola's prime suspect.

57. On April 28, 1994, Detectives Good and Ziola created a photo array with a photo of Berry as well as five similar "filler" photos. That same day, the Detectives traveled to Metz's home to show her the array. Metz had spent several minutes viewing Jackson, only a few feet away from her, in a well-lit room, had accurately described him to Detectives that night, and had said that she was sure would be able to identify him. Detectives Good and Ziola reported that Metz identified Berry—the innocent person they suspected, who does not resemble true perpetrator Jackson—from that array, with no suggestion or prompting of any kind from them.

58. In actuality, Detectives Good and Ziola engaged in direct suggestion to get Metz to identify the person they wrongly suspected, and then falsely reported in writing and in oral reports to the prosecution that Metz had independently identified Berry immediately and without hesitation.

59. On April 29, 1994, Detectives Good and Ziola showed the same photo array to three additional witnesses: Guerrero, Kaefer and Lamora. The witnesses were separated from each other when they viewed the array. Like Metz, Guerrero had had an opportunity to view true perpetrator Jackson. Kaefer and Lamora had barely glanced Jackson as he fled the Carl's Jr. on April 24, 1994—Lamora said at the time that he would *not* be able to identify the murderer. Nevertheless, Detectives Good and Ziola reported that all three witnesses selected Berry from the fair photo array, with no prompting or suggestion from them.

60. In actuality, Detectives Good and Ziola engaged in direct suggestion to get each witness to identify the person they wrongly suspected, and then falsely reported that the witnesses had all independently identified Berry. Upon information and belief, Good and Ziola conducted

**WEIL & DRAGE**
A T T O R N E Y S   A T   L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                        Page 11 of 29

additional identification procedures and failed to report exculpatory results.

61.     Based on these four identifications, Detective Good sought and obtained a warrant for Berry's arrest.  Detective Good also ordered a comparison of Berry's fingerprints to those that were found at the crime scene.

62.     Sgt. Keeton and Lt. Jolley were Detectives Good and Ziola's supervisors and, upon information and belief, knew or should have known about the investigative misconduct by Defendants Good and Ziola.

63.     Upon information and belief, this conduct was a part of a larger pattern and practice of misconduct that went ignored in the LVMPD at the time.

**Defendants Ignore Evidence Implicating Jackson**

64.     On April 29, 1994, Detective Ziola finally followed up on the tip he had received implicating "Sindog" and confirmed with San Bernardino Homicide that there was a Steven Clay Jackson who fit the description and was in the Tre 57 Crips gang.

65.     Based on this information, Detectives Good and Ziola could access Jackson's criminal records, in both Nevada and California.  This information included that "Sindog" Jackson committed similar violent robberies and that his fingerprints were on record within the Cal Identification "ID" system.

66.     Defendants Good and Ziola did not report the results of any further investigation into Jackson in the police file.  As the local leader of the Tre 57 Crips gang, with a long history of arrests, Jackson was well known to San Bernardino police.  They knew his violent reputation, which he had a history of armed robberies, and that at least some members of his Tre 57 Crips gang were branching out to Las Vegas.  They also knew that "Sindog" Jackson worked closely with his brother Daniel "D-Dog" Jackson, and that the two at times gave each other's name when arrested.  Upon information and belief, Good and Ziola failed to record some of the information they obtained which implicated Jackson—not Berry—as the shooter in the Carl's Jr. robbery, and/or intentionally failed to conduct further investigation into Jackson because they realized it would only hurt their prosecution of Berry, who at that point they had already induced four witnesses to identify.

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                Page 12 of 29

67.     The Defendants also never reported conducting any photo identification procedures with any witness with a photo of Jackson.  Upon information and belief, the Defendants either intentionally failed to conduct any such identification procedures after they had already fabricated identifications implicating Berry, because they thought it was likely to harm that case, or conducted such identification procedures and did not record exculpatory results or turn them over to Berry.

68.     On May 5, 1994, Defendants Good and Ziola received the results of the fingerprint analysis they had requested.  Berry was conclusively excluded as a match for *any* of the twenty fingerprints found at the crime scene—at least some of which were believed to have been left by the perpetrator.  In addition, there were twelve palm prints, at least some of which were also believed to have been left by the perpetrator.  At that time the technician did not have palm prints from Berry available for comparison.

**Defendants Try and Fail to Obtain a Confession from Berry**

69.     On May 19, 1994, Berry was taken into custody.  Detectives Good and Ziola interviewed him that afternoon.  During that interview, they attempted to extract a false confession from Berry but were unsuccessful.  Berry vehemently denied any involvement in the Carl's Jr. robbery or murder.

70.     On May 20, 1994, Detectives took Berry's finger and palm prints several times to compare them to those found at the scene.  However, no matches were ever made to Berry.  Employees turned out to be responsible for several of the prints.  But there were then prints that could not be accounted for.  In particular, one palm print, which was particularly exculpatory because it was found behind the counter where only employees were allowed, did not belong to any of the employees.  Defendants intentionally failed to conduct a comparison before trial because they realized the results would like exclude Berry as the perpetrator.

71.     Defendants also never compared those prints to those on record for Sindog Jackson until just before the jury was set to deliberate.

///

///

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                Page 13 of 29

**Defendants Encourage Richard Iden to Fabricate Evidence**

72.     After the fingerprint exclusion and failure to obtain any confession from Berry, Good and Ziola took steps to shore up their case.

73.     On June 7, 1994, Officers Good, Ziola and Phil Fabian approached Richard Iden in jail.  Iden had briefly shared a cell with Berry and was facing charges for forgery.  Fabian, Good, and Ziola suggested to Iden that he should claim that Berry had confessed to him.  Fabian, Good, and Ziola fed Iden details about Berry and the crime to make the fabricated confession sound more plausible.  The Defendants promised Iden leniency if he would claim Berry had confessed.

74.     Defendant John Doe #1—a Clark County Investigator— met with Iden multiple times.  With Defendant John Doe #1's help, Iden crafted his fabrications about Berry.

75.     Relying on those fed details and the promise of leniency, Iden repeated the fabrication that Defendants had fed to him, claiming Berry had confessed.  In reality, Berry — who was innocent — never confessed to Iden, and Iden and Berry did not know each other before their brief conversation in a holding cell.  At the direction of the Defendants, Iden also lied and claimed that he had not been promised anything for his statement.  Detectives Good and Ziola also falsely claimed that Iden had reached out to them, and that the details in his statement originated with him.

76.     On October 17, 1994, Iden wrote to Detectives Good and Ziola thanking them for speaking with the Judge in his case and securing the dismissal of most of the charges against him.

77.     With the assistance of Detective Good at sentencing, Iden received a sentence of probation despite a recommendation of five years custody from the Parole and Probation department.

78.     Sgt. Keeton and Lt. Jolley were Detectives Good and Ziola's supervisors and, upon information and belief, knew or should have known about the investigative misconduct by Defendants Good and Ziola.

79.     Defendants John Does #2-5 were Clark Country District Attorney supervisors and, upon information and belief, knew or should have known about the investigative misconduct by Defendant John Doe #1, a Clark County District Attorney's Office investigator.

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

## Berry's Capital Trial

80.     Detectives Good and Ziola conspired to encourage a fifth witness to falsely implicate Berry.  They invited Kurtis Wermers to Berry's preliminary hearing.  There, they used direct suggestion to induce Wermers to identify Berry as Burkes' murderer.  Though Wermers had claimed the night of the murder that he would likely not be able to identify the murder, he became convinced, based on the detectives' suggestion, that Berry was in fact guilty.  Detectives Good and Ziola encouraged Wermers to come forward with an identification.

81.     At the capital murder trial, the prosecution relied on the five identifications obtained through Defendants' improper suggestions—calling Berry's case an eyewitness case—and the testimony of Richard Iden.

82.     Though Metz and Guerrero had stared directly at Jackson during the robbery and their initial statements did not describe someone of Berry's height and weight, those same witnesses now pointed to the 5'8", 140 lbs., nineteen-year-old Berry as the true perpetrator.

83.     Similarly, though Wermers and LaMora had claimed at the time of the crime that they would probably not be able to identify the murderer—and had, in Wermers case, described what they could remember as a person roughly 6'0" in height and maybe 200 lbs.—they too identified Berry for the robbery of the Carl's Jr. and Burkes' murder.

84.     Despite the obvious problems with the identifications—including that several witnesses admitted they had no opportunity to view the true perpetrator's face and others had given descriptions at the time that did not match Berry—the prosecutor argued the identifications were reliable.  In particular, the prosecutor emphasized during the capital trial that because there was nothing suggestive about the lineups, and five separate people had independently selected Berry from a fair array, the identifications were powerful evidence of Berry's guilt.  That is what he believed; that is what the jury was led to believe.  But it was not true.

85.     Richard Iden then took the stand and testified to the same false narrative that Detectives Good, Ziola, Fabian, and John Doe #1 had fed him.  Iden told the jury that Berry had confessed to the murder of Charles Burkes.  He claimed that, while the two were incarcerated together as Berry awaited trial, Berry told him that he killed Charles Burkes away while robbing

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                                Page 15 of 29

the Carl's Jr.  He also claimed that he had known Berry for years.

86.     Detectives Good and Ziola—in conjunction with Defendants Fabian and John Doe #1—fabricated all of Iden's statement, knew that it was false, but did not provide that information to the prosecutor or defense.  They also allowed Iden to testify falsely without contradiction.

87.     Detectives Good and Ziola also never informed the prosecutor nor any other official that they had directly suggested to the witnesses that they identify Berry as the perpetrator.

88.     Berry did everything in his power to make clear that the evidence against him was false and fabricated.  Berry testified that he did not commit the crime but he did see who had: Steven Jackson who he observed run from the Carl's Jr.

89.     The jury deliberated for days and were initially deadlocked.  The parties reached an unusual bargain—the defense would agree to a non-unanimous verdict in exchange for taking the death penalty off of the table.  On May 25, 1995, based on Iden's false statement and those five unduly suggestive identifications, the jury found Berry guilty of first-degree murder, robbery, and burglary.

90.     Berry was sentenced to life in prison with the possibility of parole on the murder conviction, ten years on the burglary conviction and fifteen years on the robbery conviction, all to be served consecutively.

### Steven Jackson's Confession

91.     Berry continued to fight to prove his innocence.  In 2011, he secured the help of the Rocky Mountain Innocence Center.

92.     In 1996, Jackson was imprisoned in California for the murder of Mr. Robert Sowell.  Jackson shot Sowell execution style using a .38 handgun, the same type of weapon he used in the Carl's Jr. murder two years earlier.  During his incarceration, he became a Jehovah's witness.

93.     In 2013, lawyers from the Rocky Mountain Innocence Center visited Jackson to learn more about the Burkes murder.  Immediately upon meeting the Innocence Center lawyers, Jackson confessed to the Burkes murder.  He told them that he had not known that anyone had been convicted of the murder and stated emphatically that Berry did not murder Burkes, nor did he

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 16 of 29

have any involvement in the commission of this crime.

94.      The Innocence Center lawyers returned to interview Jackson in June 2016.  This time, the lawyers informed Jackson that Nevada still maintained the death penalty and that he could be prosecuted for his crime.  Jackson continued to maintain that he was guilty of the murder and provided additional corroborating details.

95.      Jackson's second declaration runs three handwritten, single-spaced pages and accurately describes the crime in detail, including:  what he was wearing; his directions to the store manager to open the safe; his fumbling with the locks on the safe; and his fear that the manager was stalling for time for help to arrive, whereupon, Jackson shot him.

96.      Jackson affirmed that he had told Maisha Mack about the murder at the time, and Mack came forward with a separate declaration.  She confirmed that Jackson confessed to the crime in 1994.

**Berry is Released**

97.      In December 2015, the Nevada Supreme Court ordered an evidentiary hearing to consider Jackson's confession and Berry's innocence.  The Court determined that Berry's case presented a credible case of actual evidence and held that Jackson's confession could lead a reasonable jury to seriously question the reliability of the eyewitness accounts.  The Court ordered an evidentiary hearing.

98.      In 2016, the newly created conviction review unit of the Clark County District Attorney's Office began its own investigation of the case.  Prosecutor Dan Silverstein interrogated both Jackson and Berry.  He found both credible.  In particular, Jackson offered an account of the murder that was consistent with the medical evidence and squared previous inconsistencies that police had left unresolved.

99.      Ultimately, the unit concluded that the convictions should be vacated and the charges should be dismissed.  On June 27, 2017, the prosecution filed a motion to vacate the convictions and on June 28, 2017, the charges were dismissed and vacated.  The prosecution issued a statement saying that the reinvestigation "included an interview of Mr. Jackson, at which time he confirmed what was in his affidavit and provided additional information about the crime

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

scene that would not have been known by someone who was not there at the time of the murder. The investigation also determined that there had been no contact between Berry and. Jackson since Berry's conviction."

100.    On June 28, 2017, Berry was released from prison after serving over twenty-three years in prison and jail for a crime that he did not commit.

## PLAINTIFF'S DAMAGES

101.    The unlawful, intentional, willful, deliberately indifferent, reckless, or bad-faith acts and omissions of the City and Police Defendants caused Berry to be falsely arrested and imprisoned, unfairly tried, wrongfully convicted, and forced to serve 8,451 days, or over twenty-three years, in jail and prison for a brutal crime he did not commit.

102.    As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, or deliberately indifferent acts and omissions, Berry sustained injuries and damages that continue to date and will continue into the future, including:  loss of freedom for nearly twenty years, pain and suffering, severe mental anguish, emotional distress, loss of family relationships, severe psychological damage, loss of property, legal expenses, loss of income, humiliation, indignities and embarrassment, degradation, permanent loss of natural psychological development and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled to monetary relief.

103.    Specifically, and as a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, or deliberately indifferent acts and omissions, Berry sustained physical injuries and damages, including: physical pain and suffering, personal injuries, infliction of physical illness and inadequate medical care, for which he is entitled to monetary relief.

104.    In addition to the physical injury of being wrongfully imprisoned and confined for nearly twenty years, Berry suffered additional physical harm while incarcerated as a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, or deliberately indifferent acts and omissions.

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

105.     All of the acts and omissions committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently, or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

## FEDERAL CLAIMS

### COUNT I

**Deprivation of Liberty Without Due Process of Law and
Denial of a Fair Trial by Fabricating Evidence,
Withholding Material Exculpatory and Impeachment Evidence and
Deliberately Failing to Conduct a Constitutionally Adequate Investigation
Under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments**

106.     Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

107.     Defendants Good and Ziola, acting individually and in concert, deprived Berry of his clearly established constitutional right, under the Fifth and Fourteenth Amendments of the United States Constitution, to a fair trial.

108.     These Defendants deprived Berry of his right to a fair trial by fabricating inculpatory evidence and intentionally using unduly suggestive identification procedures, direct suggestion, or coercion to obtain witness identifications, including without limitation:  fabricating the false identifications of Berry by Rae Lynn Metz, Steven Kaefer, Kevin Lamora, Rudolph Guerrero, and Kurtis Wermers.

109.     These Defendants deprived Berry of his right to a fair trial by withholding material exculpatory and impeachment evidence from prosecutors and defense, including without limitation the circumstances of the witness interviews, which would have shown that the identifications of Berry were fabricated or the result of suggestion or coercion.

110.     Defendants Good, Ziola, Fabian, and John Doe #1 deprived Berry of his right to a fair trial by fabricating inculpatory evidence.  In particular, they encouraged Richard Iden to state, falsely, that Berry confessed the murder of Burkes to him, and feeding Iden details and falsely representing that information originated with Iden.

111.     Defendants Good, Ziola, Fabian, and John Doe #1 performed the above-described

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Berry's clearly established constitutional rights. No reasonable officer in 1994 would have believed this conduct was lawful.

112.    Berry is completely innocent of the murder of Burkes. The prosecution finally terminated in Berry's favor on June 28, 2017, when the convictions were vacated and the indictment dismissed.

113.    As a direct and proximate result of Defendants' actions, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT II

### Malicious Prosecution
### Under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments

114.    Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

115.    Defendants Good, Ziola, Fabian, and John Doe #1, with malice and knowing that probable cause did not exist to arrest Berry and prosecute him for the murder of Burkes, acting individually and in concert caused Berry to be arrested, charged, and prosecuted for that crime, thereby violating his clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free from unreasonable searches and seizures.

116.    Specifically, these Defendants, acting individually and in concert, fabricated evidence and intentionally withheld from and misrepresented to prosecutors and the grand jury exculpatory facts that vitiated probable cause against Berry and would have impeached witnesses for the prosecution at trial, including but not limited to the fact that the identifications of Berry as the culprit were the result of impermissible suggestion or coercion, and that the police had withheld exculpatory and impeachment evidence. These Defendants also failed to conduct a constitutionally adequate investigation in light of evidence pointing to other suspects and away from Berry or to investigate his alibi. Finally, Defendants acting individually and in concert fabricated evidence by encouraging Richard Iden to state falsely that Berry had confessed to him

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                                    Page 20 of 29

1    the Burkes murder.

2    117.    These Defendants performed the above-described acts under color of state law,

3    intentionally, with reckless disregard for the truth, and with deliberate indifference to Berry's

4    clearly established constitutional rights.  No reasonable officer in 1994 would have believed this

5    conduct was lawful.

6    118.    Berry is completely innocent of the murder of Burkes.  The prosecution finally

7    terminated in Berry's favor on June 28, 2017, when the indictment was dismissed and vacated.

8    119.    As a direct and proximate result of Defendants' actions, Berry was wrongly

9    convicted and imprisoned for over twenty-three years and suffered the other grievous and

10   continuing damages and injuries set forth above.

**COUNT III**

**42 U.S.C. § 1983 Failure to Intercede**

13   120.    Berry hereby incorporates by reference all of the foregoing paragraphs and further

14   alleges as follows:

15   121.    By their conduct and under color of state law, Defendants Good, Ziola, Fabian, and

16   John Doe #1,  had opportunities to intercede on behalf of Berry to prevent his false arrest,

17   malicious prosecution, false imprisonment, and deprivation of liberty without due process of law,

18   but, due to their intentional conduct, recklessness, or deliberate indifference, declined or refused to

19   do so.

20   122.    These Defendants' failures to intercede violated Berry's clearly established

21   constitutional right to be free from unreasonable search and seizure and not to be deprived of

22   liberty without due process of law as guaranteed by the Fourth, Fifth, and Fourteenth

23   Amendments.  No reasonable police officer in 1994 would have believed that failing to intercede

24   to prevent these defendants from fabricating inculpatory evidence, intentionally using unduly

25   suggestive identification procedures, direct suggestion, or coercion to obtain witness

26   identifications, withholding material, exculpatory, or impeachment evidence, deliberately failing to

27   conduct a constitutionally adequate investigation, and causing Berry to be arrested and prosecuted

28   without probable cause, were lawful.

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                              Page 21 of 29

123.     Berry is completely innocent of the murder of Burkes.  The prosecution finally terminated in Berry's favor on June 28, 2017, when the indictment was dismissed and vacated.

124.     As a direct and proximate result of these Defendants' actions, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT IV

### 42 U.S.C. § 1983 Civil Rights Conspiracy

125.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

126.     Defendants Good, Ziola, Fabian, and John Doe #1, acting within the scope of their employment and under color of state law, agreed among themselves and with other individuals—including Richard Iden—to act in concert in order to deprive Berry of his clearly established Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

127.      In furtherance of the conspiracy Defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

    a.     Fabricating inculpatory evidence in reports and pretrial communications with the prosecution, including the purported independent identifications of Berry;

    b.     Committing perjury during hearings and trials;

    c.     Intentionally or with deliberate indifference failing to comply with their duty to disclose *Brady* material during the pendency of the case; and

    d.     Working in concert with witness Richard Iden to fabricate a prosecution against Berry for a crime he did not commit.

128.     Berry is completely innocent of the murder of Burkes.  The prosecution finally terminated in Berry's favor on June 28, 2017, when the indictment was dismissed.

129.     As a direct and proximate result of these Defendants' actions, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the other grievous and

WEIL & DRAGE
A T T O R N E Y S   A T   L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 22 of 29

continuing damages and injuries set forth above.

**COUNT V**

**42 U.S.C. § 1983 Supervisory Liability**

130. Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

131. The individual Defendant police detectives Good and Ziola acted with impunity in an environment in which they were not adequately trained, supervised, or disciplined by Defendant Jolley and Keaton and other supervisors, in this case and as a matter of practice.

132. Supervisors within the LVMPD acted with gross negligence, recklessness, or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the defendant police officers, and thereby caused the individual defendant police officers to deprive Berry of his clearly established constitutional rights, including his rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

133. Had those supervisors not provided grossly inadequate training, supervision, and discipline of the defendant officers, these defendants would not have used unduly suggestive identification procedures, direct suggestion or coercion to obtain witness identifications of Berry, fabricated inculpatory evidence, committed perjury, withheld exculpatory and impeachment evidence, and intentionally and maliciously caused Berry to be arrested and prosecuted without probable cause.  Those supervisors were directly involved in the investigation of Berry and directly supervised the specific investigative acts taken by the individual officer defendants in this case.

134. The grossly negligent, reckless, or deliberately indifferent conduct of Las Vegas Police Department supervisors under color of state law violated their clearly established duty, in 1994, to supervise defendants Good, Ziola, and Fabian, and no reasonable police supervisor in 1994 would have believed that grossly negligent, reckless, or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinate officers was lawful.

135. Defendant John Doe Supervisors #2 through #5 within the Clark County District

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                Page 23 of 29

Attorney's Office, a subdivision of Clark County, acted with gross negligence, recklessness, or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of the defendant John Doe #1, a District Attorney's Office investigator, and thereby caused the him to deprive Berry of his clearly established constitutional rights, including his rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

136.     Had Defendants John Doe Clark County Supervisors #2 through #5 not provided grossly inadequate training, supervision, and discipline of the defendant John Doe #1, John Doe #1 would not have fabricated inculpatory evidence, withheld exculpatory and impeachment evidence, and intentionally and maliciously caused Berry to be arrested and prosecuted without probable cause.  Those supervisors were directly involved in the investigation of Berry and directly supervised the specific investigative acts taken by the Defendant John Doe #1 in this case.

137.     The grossly negligent, reckless, or deliberately indifferent conduct of the Defendants John Doe Clark County Supervisors #2 through #5 under color of state law violated their clearly established duty, in 1994, to supervise defendant John Doe #1, and no reasonable District Attorney supervisor in 1994 would have believed that grossly negligent, reckless, or deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinate investigators was lawful.

138.     Berry is completely innocent of the murder of Burkes.  The prosecution finally terminated in Berry's favor on June 27, 2017, when the indictment was dismissed.

139.     As a direct and proximate result of these Defendants' actions, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the other grievous and continuing damages and injuries set forth above.

///

///

///

///

WEIL & DRAGE
A T T O R N E Y S   A T   L A W
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}

## COUNT VI

**42 U.S.C. § 1983 *Monell* Claim**
***Monell* Unconstitutional Policy, Custom, or Pattern and
Practice of Promoting, Facilitating, or Condoning Improper, Illegal and
Unconstitutional Investigative Techniques and
Failure to Supervise, Discipline and Train**
***Against Las Vegas Metropolitan Police Department***

140.     Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

141.     Prior to and at the time of the unlawful investigation, prosecution, and conviction of Berry, the LVMPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques in serious felony investigations, including but not limited to the following: (a) the reliance on witness statements that law enforcement knew or should have known were false; (b) the use of suggestive techniques, direct suggestion, or coercive techniques in interviews and interrogations to obtain false statements; (c) the fabrication of inculpatory evidence; (d) the suppression of exculpatory and impeachment evidence; (e) the intentional failure to conduct adequate investigations of crimes; and (f) engaging in the affirmative concealment and cover up of this type of misconduct.

142.     Prior to and at the time of the unlawful investigation, prosecution, and conviction of Berry, the LVMPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to adequately supervise, discipline and train LVMPD detectives and officers in connection with fundamental investigative tasks implicating the constitutional rights of witnesses and suspects, including but not limited to using police informants, conducting custodial interrogations and witness interviews, documenting and disclosing exculpatory and impeachment evidence to prosecutors, and the affirmative ongoing duty to come forward with exonerating evidence.

143.     The LVMPD policy, custom, or pattern and practice of promoting, facilitating, or condoning improper, illegal, and unconstitutional investigative techniques in serious felony investigations, and its policy, custom, or pattern and practice of failing to adequately supervise,

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 25 of 29

discipline and train LVMPD detectives and officers was reflected by the multiple acts of misconduct and illegality committed by multiple LVMPD detectives and supervisors in relation to multiple witnesses in the Berry investigation, as described above.

144.    Such unconstitutional municipal customs, practices, or policies were the moving force behind the false evidence used against Berry, causing his arrest, prosecution, and over twenty-three years of incarceration, as well as all the other grievous injuries and damages set forth above.

## STATE OF NEVADA CLAIMS

### COUNT VII

### Malicious Prosecution

145.    Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

146.    Defendants Good, Ziola, Fabian, and John Doe #1, acting individually and in concert, initiated, manipulated and facilitated the wrongful prosecution and conviction of Berry as hereinabove described.

147.    Defendants did so with malice and without probable cause.

148.    Berry has been exonerated of the crimes for which he was maliciously and wrongfully prosecuted and convicted and all charges against him related thereto have been dismissed.

149.    As a direct and proximate result of Defendants' conduct, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the other grievous and continuing damages and injuries set forth above.

### COUNT VIII

### False Imprisonment

150.    Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

151.    Defendants Good and Ziola, acting individually, in concert and with malice, initiated, manipulated and implemented the wrongful arrest, prosecution, conviction, restraint and

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 26 of 29

imprisonment of Berry as hereinabove described.

152.   Defendants did so with both the probable imminence of force and actual use of force without legal cause or justification and with the intent to confine and actually confining Berry within the boundaries fixed by Defendants.

153.   As a direct and proximate result of Defendants' conduct, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT IX

### Intentional Infliction of Emotional Distress

154.   Berry hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

155.   Defendants Good, Ziola, Fabian, and John Doe #1's conduct, engaged in individually, in concert and with malice, was extreme and outrageous.

156.   Defendants intended their conduct to cause Berry emotional distress and/or recklessly disregarded the probability that it would do so.

157.   Berry in fact suffered extreme and severe emotional distress.

158.   As a direct and proximate result of Defendants' conduct, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the emotional and other grievous and continuing damages and injuries set forth above.

## COUNT X

### Negligent Supervision

159.   Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

160.   Defendants LVMPD, Jolley, and Keaton had a general duty to use reasonable care in the training and supervision of Good and Ziola, and each of them.

161.   Defendant Clark County had a general duty through the Clark County District Attorney's Office to use reasonable care in the training and supervision of Defendant John Doe #1.

162.   Defendants LVMPD, Clark County, Jolley, and Keaton breached that duty.

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}                    Page 27 of 29

163.     As a direct and proximate result of Defendants' conduct, Berry was wrongly arrested, convicted and imprisoned for over twenty-three years and suffered the grievous and continuing damages and injuries set forth above.

## COUNT XI

### Respondent Superior

164.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

165.     Defendants Good, Fabian and Ziola's conduct was not truly independent of but rather consistent with LVMPD practice and procedures, was engaged in in the course of performing the very tasks assigned to both and each of them by LVMPD, and was reasonably foreseeable to LVMPD and the Defendants John Doe supervisors under the facts and circumstances of the case considering the nature and scope of their employment.

166.     Defendants John Doe #1 conduct was not truly independent of but rather consistent with the Clark County District Attorney's Office's practice and procedures, was engaged in in the course of performing the very tasks assigned to both and each of them by Clark County District Attorney's Office's, and was reasonably foreseeable to Clark County District Attorney's Office's and the Defendants John Doe #2 through #5 supervisors under the facts and circumstances of the case considering the nature and scope of Defendant John Doe #1's employment.

167.     As a direct and proximate result of said Defendants' conduct, Berry was wrongly convicted and imprisoned for over twenty-three years and suffered the emotional and other grievous and continuing damages and injuries set forth above.

168.     LVMPD and Clark County are likewise liable to Berry for said conduct, injuries and damages pursuant to NRS 41.130.

### PRAYER FOR RELIEF

WHEREFORE, Berry demands judgment jointly and severally against Defendants as follows:

A. That the Court award compensatory damages to him and against the Defendants, jointly and severally, in an amount to be determined at trial but that exceeds the jurisdictional limits of all

WEIL & DRAGE
ATTORNEYS AT LAW
A PROFESSIONAL CORPORATION
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}

1  lower courts that would otherwise have jurisdiction over this action;

2       B. That the Court award punitive damages to him, and against all individual Defendants, in

3  an amount to be determined at trial, that will deter such conduct by Defendants in the future;

4       C. For a trial by jury;

5       D. For pre-judgment and post-judgment interest and recovery of his costs, including

6  reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

7       E. For any and all other relief to which he may be entitled.

8       DATED this 12th day of April, 2019.

                    Respectfully submitted,

10                      WEIL & DRAGE, APC

12                      By:  /s/  John T. Wendland_____
                    John T. Wendland, Esq.

13                      (Nevada Bar No. 7207)
                    2500 Anthem Village Drive

14                      Henderson, NV 89052

15                      Nick Brustin, Esq.

16                      Emma Freudenberger, Esq.
                    Len Kamdang, Esq.

17                      NEUFELD SCHECK & BRUSTIN, LLP
                    99 Hudson Street, 8th Floor

18                      New York, NY 10013

19                      Craig C. Coburn, Esq.

20                      Steven H. Bergman, Esq.
                    Samantha Wilcox, Esq.

21                      RICHARDS BRANDT MILLER NELSON
                    Wells Fargo Center, 15th Floor

22                      299 S. Main Street (84111)
                    P.O. Box 2465

23                      Salt Lake City, UT 84110-2465

25                      Attorneys for Plaintiff,
                    DeMARLO BERRY

WEIL & DRAGE
A T T O R N E Y S  A T  L A W
2500 Anthem Village Drive
Henderson, NV 89052
Phone: (702) 314-1905
Fax: (702) 314-1909
www.weildrage.com

{01552288;1}         Page 29 of 29